ELECTRONICALLY FILED
2020 Jul 31 AM 9:41
CLERK OF THE SEDGWICK COUNTY DISTRICT COURT
CASE NUMBER: 2020-CV-001076-TI

**IN THE EIGHTEENTH JUDICIAL DISTRICT
DISTRICT COURT, SEDGWICK COUNTY, KANSAS
CIVIL DEPARTMENT**

| | |
|---|---|
| ISABELLA HANSEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: 2020-CV-001076-TI |
| ) | |
| WIL-KEN ENTERPRISES, INC., ) | |
| and QUINZEL BURNS ) | |
| ) | |
| Defendants. ) | |
| ) | |

Pursuant to K.S.A. Chapter 60

## FIRST AMENDED PETITION

Plaintiff Isabella Hansen, by and through undersigned counsel, states and alleges as follows for her claims against Defendants Wil-Ken Enterprises, Inc. and Quinzel Burns:

1. Plaintiff Isabella Hansen is a resident of Butler County, Kansas.

2. Defendant Wil-Ken Enterprises, Inc. ("Wil-Ken") is a Kansas corporation doing business in the State of Kansas. Wil-Ken operates Popeyes Louisiana Kitchen stores at a number of locations in Wichita, Kansas.

3. Defendant Quinzel Burns is a resident of Sedgwick County, Kansas.

4. During the time period February 2019 through December 2019, Plaintiff Isabella Hansen was employed by Defendant Wil-Ken.

5. In February 2019, Defendant Wil-Ken employed Plaintiff as a manager in training for a general manager position and assigned her to its Popeyes Louisiana Kitchen store at Rock Road in Wichita, Kansas.

6. In late February or early March 2019, Defendant Wil-Ken moved Plaintiff to the Popeyes Louisiana Kitchen store at Seneca street in Wichita, Kansas for additional training. Plaintiff's supervisor at that location was the general manager Derek (last name unknown).

7. Beginning in March 2019, Plaintiff's male co-worker, Gary (last name unknown), also a manager in training, began brushing up against Plaintiff in a sexual and offensive manner, grabbing her breasts and making sexually suggestive and offensive comments to her, including, but not necessarily limited to, commenting about her breasts and buttocks, telling her they should go into the walk-in refrigerator to "have some fun", that they couldn't go in the fridge because "it would get even hotter", and asking her for blowjobs.

8. Plaintiff reported Gary's conduct toward her to her general manager Derek, whose response was "well you're a pretty girl, what do you expect. You have big boobs; people are going to comment."

9. Defendant Wil-Ken Enterprises, by and through its general manager Derek took no steps whatsoever to remedy the reported sexual harassment.

10. In April 2019, Plaintiff complained to her district supervisor, Jodi Rutledge, Gary's sexual harassment towards her as set out herein.

11. In April 2019, Plaintiff met with her district manager Jodi Rutledge and Willie Kendrick, the president of Wil-Ken. At this meeting, Plaintiff complained of Gary's sexual harassment towards her as set out herein. Jodi Rutledge and Willie Kendrick told Plaintiff that they did not believe this was sexual harassment, just inappropriate joking.

12. At the April 2019 meeting described above, Plaintiff told Jodi Rutledge and Willie Kendrick that she did not want to work with Gary because he was sexually harassing her. They said Gary was just joking but they would try to have him moved.

13. Defendant Wil-Ken left Gary at the Seneca street location for several weeks before transferring him out of that store. During this time period, Plaintiff was forced to work alongside him.

14. After the April 2019 meeting where Plaintiff complained of the above-described sexual harassment to Jodi Rutledge and Willie Kendrick, Plaintiff's general manager Derek retaliated against her by stopping her general manager training. Derek told Plaintiff "Gary is a good guy" and that Plaintiff is making things up and that "Gary is a better manager than you". Derek told Plaintiff she should not have said anything about Gary's behavior. Derek became aggressive toward Plaintiff, throwing things, yelling at her, and making demeaning comments toward her.

15. Plaintiff complained about Derek's retaliatory behavior to her to Jodi Rutledge, who did nothing about it.

16. In mid-June 2019, Defendant Wil-Ken transferred Plaintiff to its Popeyes Louisiana Kitchen store at Central and West street in Wichita, Kansas where she finished her training and was upgraded to assistant manager.

17. Defendant Wil-Ken did not upgrade Plaintiff to general manager because Defendant Wil-Ken, by and through its general manager Derek, had refused to train her as a general manager in retaliation for her having complained about Gary's sexual harassment of her.

18. Plaintiff's immediate supervisor at the Central and West store was Defendant Quinzel Burns.

19. At all times material, Defendant Quinzel Burns was a general manager and Plaintiff's immediate supervisor.

20. At all times material, Defendant Wil-Ken gave Defendant Quinzel Burns the power and authority to make decisions regarding Plaintiff's employment, including the power to instruct her and supervise her work activity, override her decisions, and to fire her.

21. In July 2019, Defendant Quinzel Burns, in his capacity as Plaintiff's supervisor, exercising the power and authority invested in him by Defendant Wil-Ken, instructed Plaintiff to come into the office with him because he needed to show her something confidential on the computer. Plaintiff complied with this instruction and went into the office with Defendant Quinzel Burns, whereupon he locked the door, pushed her into a "blind spot" outside of camera range and forced her to perform oral sex on him. Defendant Quinzel Burns told Plaintiff that if she does not keep quiet, he will hurt her and if she did not do it, she'll get fired and she will not be able to support her two little boys. Based on his supervisory status over her, and his threat to fire her, Plaintiff gave in to Defendant Quinzel Burns' demand that she performs oral sex on him.

22. Defendant Quinzel Burns told Plaintiff that there is no point in complaining to anyone about his conduct because they did not believe her the first time and they won't believe her now.

23. Thereafter, Defendant Quinzel Burns forced Plaintiff to come into the office with him and to perform oral sex on him with threats of termination if she refused. This happened again on or about July 10, 2019, July 13, 2019, July 16, 2019, July 26, 2019, July 28, 2019, August 3, 2019, August 5, 2019, August 9, 2019, August 13, 2019, August 19, 2019, August 20, 2019 and August 26, 2019. Each of these assaults was unwanted and was made possible by virtue of Defendant Quinzel Burns' position of management and authority over Plaintiff.

24. On one occasion Plaintiff told Defendant Quinzel Burns that she would not come into the office with him for sex, whereupon he told her that he was going to write her up and he did so on August 9, 2019.

25. On or about August 29, 2019, Defendant Quinzel Burns used his position of management and authority over Plaintiff to force her into the office and have sexual intercourse with him.

26. Following the August 29, 2019 assault referenced above, Plaintiff contacted the general manager of the Rock Road store. She told him what Quinzel had done and asked him if she could be transferred to the Rock Road store away from Quinzel. He replied that that was outside his authority and that she needed to talk to the district manager Jodi Rutledge.

27. On or about September 18, 2019, Plaintiff contacted Jodi Rutledge and requested a transfer because she had been sexually assaulted by Defendant Quinzel Burns.

28. On or about September 19, 2019 Plaintiff and Plaintiff's mother Angelina Hansen met with Jodi Rutledge, Defendant Wil-Ken owner Willie Kendrick, and were later joined by an office assistant, Sandy. During this meeting, Plaintiff told all present

what Defendant Quinzel Burns had done to her. Willie told Plaintiff that it was her fault because she is a manager and she should have been more assertive to prevent it.

29. In late September 2019, Plaintiff was moved to the Popeye's Louisiana Kitchen store at Hillside in Wichita, Kansas. She did well there.

30. In November 2019, Plaintiff was moved to the Popeye's Louisiana Kitchen store at Rock Road due to a vacancy there.

31. When Plaintiff was at the Rock Road store, the shift manager, Anthony (last name unknown) started pestering her about dating him. She refused him, but he persisted, and told her that he was going to follow her home so he could find out where she lived so he could stalk her whenever he wanted.

32. On or about November 29, 2019, Plaintiff reported Anthony's conduct to her general manager, Dennis (last name unknown), and he said he didn't believe her. He said she was taking it the wrong way and misreading Anthony's actions.

33. On or about the morning of December 4, 2019, Plaintiff, by written notice, quit her job at Defendant Wil-Ken. She did so because of the unrelenting sexual harassment, assault, and unresolved hostile work environment to which she had been constantly subjected.

34. After Plaintiff gave her written notice that she had quit her job, she was falsely written up for having failed to come into work that day.

35. The day after Plaintiff gave her written notice that she had quit her job, she was again falsely written up for having failed to come to a scheduled meeting.

36. Prior to having first assaulted Plaintiff in July 2019, Defendant Quinzel Burns, who was in his 30's, had engaged in a sexual relationship with a 16-year-old co-employee at Popeyes. Willie Kendrick and Jodi Rutledge had actual knowledge of this matter and did nothing to correct it.

37. Defendant Quinzel Burns committed the tort of assault against Plaintiff.

38. Defendant Quinzel Burns committed the tort of battery against Plaintiff.

39. Defendant Quinzel Burns committed the tort of outrage against Plaintiff.

40. Defendant Quinzel Burns committed the tort of intentional infliction of emotional distress against Plaintiff.

41. Defendant Quinzel Burns' actions against Plaintiff described herein were facilitated and made possible by virtue of the position of power and authority over Plaintiff in which Defendant Wil-Ken placed Defendant Quinzel Burns.

42. Defendant Wil-Ken is vicariously liable for all common law torts which Defendant Quinzel Burns committed against Plaintiff.

43. Defendant Wil-Ken knew or should have known that Defendant Quinzel Burns was a sexual predator who could not be trusted with a position of power and authority over its female employees, including Plaintiff.  Notwithstanding, Defendant Wil-Ken continued to employ Defendant Quinzel Burns in a position of power and authority over female employees, including Plaintiff.

44. Defendant Wil-Ken is liable for its negligence in placing Defendant Quinzel Burns in a position where he had the opportunity to sexually abuse and assault the female employees, including Plaintiff, over whom he had power and authority.

45. Defendants and each of them illegally discriminated against Plaintiff on account of her sex and maintained a hostile work environment on account of her sex.

46. Defendant Wil-Ken, by and through its general manager, Derek, took adverse employment action against Plaintiff by refusing to train her as a general manager in retaliation for her having complained about being sexually harassed by Gary.

47. Defendant Wil-Ken, by and through its general manager, Defendant Quinzel Burns, took adverse employment action against Plaintiff by writing her up when she told him she was not going into the office with him for sex.

48. Defendant Wil-Ken retaliated against Plaintiff for engaging in protected activities.

49. Defendant Wil-Ken violated Plaintiff's rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

50. Defendant Wil-Ken violated Plaintiff's rights under the Kansas Act Against Discrimination, K.S.A. 44-1001 *et seq.*

51. Plaintiff has been damaged by Defendants' illegal conduct.

52. Plaintiff has exhausted all necessary administrative remedies.

WHEREFORE, Plaintiff Isabella Hansen prays that judgment be entered in her favor, and against Defendants Wil-Ken Enterprises, Inc. and Quinzel Burns, and each of them, for damages in excess of $75,000.00, representing economic losses, noneconomic losses, compensatory damages, general damages, punitive damages and all other relief that the Court deems just and equitable.

**Plaintiff demands a trial by jury on all issues to which such right exists, including the existence and/or enforceability of any alleged arbitration agreement.**

DATED: July 31, 2020.

        SUBMITTED BY:

        GRAYBILL & HAZLEWOOD, LLC

        <u>/s/ Susan R. Schrag</u>
        Susan R. Schrag #11112
        Attorney at Law
        Box 203
        Clearwater, KS 67026
        316.272-6741 (Telephone)
        <u>susan@schraglaw.net</u>

        and

        <u>/s/ Sean McGivern</u>
        Sean M. McGivern, #22932
        218 N. Mosley
        Wichita, KS 67202
        Telephone: (316) 266-4058
        Facsimile: (316) 462-5566
        <u>sean@graybillhazlewood.com</u>
        ATTORNEYS FOR PLAINTIFF

**CERTIFICATE OF SERVICE**

I hereby certify that on July 31, 2020, I electronically filed the above and foregoing with the Clerk of the Court by using the e-filing system which will send notice of electronic filing to the following:

Jeanne V. Sourgens
Joseph, Hollander & Craft LLC
5200 Bob Billings Pkwy, Suite 201
Lawrence, KS 66049-5810
Main: (785) 856-0143
Fax: (785) 312-3129
jsourgens@josephhollander.com
*Attorney for Defendant Wil-Ken Enterprises, Inc.*

*Via U.S. Mail*:
Quinzel Burns
546 N. McComas St. Apt. 3
Wichita, KS 67203
*Defendant*

      /s/  Sean McGivern
Sean McGivern, #22932